Bakis v Levitin (2004 NY Slip Op 50542(U))

[*1]

Bakis v Levitin

2004 NY Slip Op 50542(U)

Decided on June 7, 2004

Supreme Court, Nassau County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 7, 2004

Supreme Court, Nassau County
DR. ALEXANDER BAKIS, Plaintiff,
against
LAZAR LEVITIN and 587 DEVELOPMENT INCORPORATED, Defendants.
10178-03

COUNSEL FOR PLAINTIFF
William Turkish, PLLC
33 South Service Road
Jericho, New York 11753
COUNSEL FOR DEFENDANTS
(for 587 Development Incorporated)
Goldberg, Scudieri & Block, Esqs.
45 West 45th Street
New York, New York 10036
(for Lazar Levitin (Pro Se)
Lazar Levitin, Pro Se
853 Broadway - Suite 1516
New York, New York 10003

Leonard B. Austin, J.
Plaintiff moves for (a) summary judgment, pursuant to CPLR 3212, against Defendants in the sum of $360,000.00; (b) a declaration of the validity of the Agreement of Shareholders of 587 Development Incorporated dated September 8, 2002; and (c) dismissal of Defendants' counterclaims.
Defendants Lazar Levitin ("Levitin") and 587 Development Incorporated ("587 Development") respectively move and cross-move for summary judgment, pursuant to CPLR 3212, dismissing the complaint.
BACKGROUND
In this action Plaintiff, a medical doctor practicing in Brooklyn, New York, seeks (1) a judicial declaration confirming the validity the Agreement of Shareholders of 587 Development Incorporated dated September 8, 2002 ("Agreement of Shareholders"), which, according to Plaintiff, compelled Defendants to repurchase his 50% shareholder interest therein for the sum of $360,000.00 by November 10, 2002; (2) the recovery of said sum; and (3) an injunction restraining Defendants from selling, transferring, assigning and/or disposing of premises located at 1513-23 Avenue Z, Brooklyn, New York. Pursuant to paragraph 8 of the Agreement of Shareholders among the parties, Plaintiff was to become a 50% shareholder in the Defendant corporation in order to secure his $300,000.00 "investment" toward the purchase of a piece of real property for development located at 1513-23 Avenue Z, Brooklyn, New York. Closing of title for the property was scheduled for September 10, 2002 at 10:00 a.m. On or before the closing of title, Plaintiff tendered payment of his "investment" in the form of two checks; to wit: one in the sum of $260,000.00, made payable to Gretrude Pratt Hirsch, Dorothy F. Harvey and Dorothy Glasgow, and an additional check in the sum of $40,000.00 made payable to Robert S. Sikorski, as attorney. Those funds were used to purchase the subject premises.
Paragraph A of the Rider to the Agreement of Shareholders provides that:

"Sixty days from the closing, the corporation will repurchase all of the shares purchased by Dr. Bakis and repay to Dr. Bakis the $300,000.00 invested by him in the corporation as a return on capital. Dr. Bakis shall also receive a payment of $60,000.00 also in consideration of the repurchase of said stock shares."
Notwithstanding the passage of more than sixty days from the closing November 10, 2003, Plaintiff has not received any return on his capital investment. Plaintiff contends that he remains [*2]a 50% shareholder in 587 Development as evidenced by Paragraph A of the Agreement of Shareholders and retains certain rights thereunder, such as 1) participation in the development of the 1513-23 Avenue Z property, including the construction, by the corporation, of a medical office and 2) receipt of a "sweetheart" lease with respect to a medical office in consideration of his further payment of $760,000.00, as evidenced by paragraph B of the Rider which states:

"Payment to Dr. Bakis of the $360,000.00 shall terminate his interest in the corporation, but this payment and repurchase of shares shall not affect the corporation's obligations to Dr. Bakis for the building of the medical space for him in the parcel I premises as specified in the Shareholders Agreement."
Plaintiff, however, no longer has any interest in obtaining medical space in the building to be developed by 587 Development. He now seeks only the return of his investment plus the $60,000.00 sock purchase price pursuant to the Agreement of Shareholders, or $360,000.00.
In support of his motion for summary judgment, Plaintiff "categorically" denies that he, at any time, offered to lend either Levitan or 587 Development the sum of $300,000.00 nor did he ever discuss or request interest on his investment. Rather, he attests, he was motivated solely by a desire to obtain a return on his investment and obtain a "sweetheart" lease for space in the new building which was to be erected by Defendant corporation.
Defendants oppose Plaintiff's motion. They have each moved to dismiss the complaint contending that the transaction at issue is a criminally usurious loan (Penal Law §190.40) and, therefore, is unenforceable.
While it is undisputed that the parties executed the Agreement of Shareholders as alleged by Plaintiff and that the $300,000.00 provided by him was used to purchase the subject real property, Defendants argue that the Agreement on which Plaintiff's claim is grounded, as well as the purported lease for medical space, were nothing more than a subtefuge to cover up a criminally usurious loan and neither Levitin nor Dr. Bakis
intended to be bound by the provision which allocated Dr. Bakis one share or 50% of the stock of Defendant corporation for 60 days.
DISCUSSION
All of the claims presented by both sides revolve around the interpretation and enforceablility of the Agreement of Shareholders. As a general proposition, the "the signer of a written agreement is conclusively bound by its terms unless there is a showing of fraud, duress or some other wrongful act on the part of any party to the contract. South Street Ltd. Partnership v. Jade Sea Restaurant, Inc., 187 A.D. 2d 396, 397 (1st Dept. 1992), lv. app. den., 81 N.Y. 2d 705 (1993). Even though Defendants have made no such showing, they seek to be relieved of the obligation to pay the amount allegedly due and owing on the grounds that transaction was a usurious loan; i.e., $300,000.00 for 60 days which amounts to 120% annual interest. Moreover, Defendants maintain that neither they nor Plaintiff intended to be bound by the provisions of the Agreement of Shareholders which was executed solely as a subterfuge to disguise the true nature of the transaction.
New York law prohibits usury both civilly and criminally. As stated by the Court of [*3]Appeals in Schneider v. Phelps, 41 N.Y. 2d 238, 243 (1977), "[t]he purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation." In its present form, the civil usury statute (General Obligations Law §5-501[2]), provides that "[n]o person or corporation shall, directly or indirectly, charge, take or receive any money * * * on the loan or forbearance of any money * * * at a rate exceeding" 16% per annum. The rate is established by Banking Law §14-a. A loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law, even if the lender has no specific intent to violate the usury laws. Hammond v. Marrano, 88 A.D. 2d 758, 759 (4th Dept 1982). When "any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation" of the usury laws, "the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." General Obligations Law §5-511(2). See also, Seidel v. 18 East 17th Street Owners,79 N.Y. 2d 735, 740 (1992).
Hence, the consequences to the lender of a usurious transaction can be harsh, indeed. The borrower may be relieved of all further payment - - not only interest but also outstanding principal. Any mortgage securing payment of a usurious loan must be cancelled. Borowski v. Falleder, 296 A.D. 2d 301 (1st Dept. 2002). The civil usury statute does not, however, apply to loans of $250,000.00 or more. Loans in such amounts are, therefore, not subject to the voiding provision of the civil usury statute, regardless of the rate of interest.
While pursuant to General Obligations Laws 5-521 (1) corporations - - generally the antithesis of "desperately poor people" referred to in Schneider v. Phelps supra - - are ordinarily barred from asserting a usury defense, the prohibition is inapplicable in an action in which a corporation, such as 587 Development, interposes the defense of criminal usury as described in §190.40 of the Penal Law. General Obligations Law §5-521 (3). Penal Law §190.40 provides that "[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money * * * as interest on the loan * * * of any money * * *, at a rate exceeding twenty-five per cent per annum or the equivalent rate for a longer or shorter period."
To be considered criminal usury, the amount of the loan must be less than $2.5 million. General Obligations Law §5-501 (6) (b). Criminal usury is a Class E felony with a penalty of imprisonment of up to four years. Penal Law §§70.00(2), 190.40. A loan with an interest charge that exceeds 25%, together with conduct that is part of "a scheme or business of making or collecting usurious loans," will result in a Class C felony charge and imprisonment of up to fifteen years. Penal Law §§70.00 (2), 190.40, 190.42.
As pointed out in dicta by the court in In re Venture Mortgage Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2003), while there is nothing in the criminal usury statute that specifically provides for voiding of a criminally usurious loan, and it is unclear whether the New York Legislature intended that criminally usurious loans of $250,000.00 or greater be voided, one who commits criminal usury should not be in a better position than a usurer who charges a non-criminal rate of interest. In the words of the Second Circuit "it is an open question under New York law whether a criminally usurious loan is void." The Second Circuit opined that "it may be expected * * * that one who commits
criminal usury should not be preferred (and be able to collect) over the usurer who charges a rate of interest that is not criminal." Id. At 189.
[*4]
Inasmuch as usury laws apply only to loans and forebearances, and not to investments (General Obligations Law §5-501[1][2]), if the transaction is not a loan there can be no usury, regardless of how, unconscionable the contract may be. Orvis v. Curtiss, 157 N.Y. 657, 661 (1899). In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender. Donatelli v. Siskind, 170 A.D. 2d 433, 434 (2nd Dept. 1991); Transmedia Restaurant Co., Inc. v. 33 E. 61st Street Restaurant Corp., 184 Misc.2d 706 (Sup. Ct. N.Y. Co.), app. withdrawn, 273 A.D. 2d 950 (2000).
The proponent of a summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by tendering sufficient evidence to demonstrate the absence of any material issues of fact. Winegrad v. New York Univ. Med. Ctr., 64 N.Y. 2d 851 (1985). It is a drastic remedy which should not be granted where triable issues of fact are raised and cannot be resolved on the conflicting affidavits of the parties. Mason v. Dupont Direct Financial Holdings, Inc., 302 A.D. 2d 260, 262 (1st Dept. 2003). Here, the parties have presented diametrically opposed versions of the nature and character of the transaction at issue. Under the circumstances presented, a proper disposition of this case can be made only after both parties have been afforded an opportunity to develop proof at trial regarding the critical question of whether the transaction is, in fact, a loan violative of the criminal usury statute as Defendants contend or an investment as Plaintiff argues.
Accordingly, it is,
ORDERED, that Plaintiff's motion for summary judgment and related relief is denied; and it is further,
ORDERED, that Defendant Lazar Levitin's motion for summary judgment is denied; and it is further,
ORDERED, that Defendant 587 Development Incorporated's motion for summary judgment is denied; and it is further,
ORDERED, that counsel for the parties shall appear for a conference to schedule the trial of this matter on July 20, 2004 at 9:30 a.m.
This constitutes the decision and Order of the Court.
Dated: Mineola, NY _____________________________
 June 7, 2004 Hon. LEONARD B. AUSTIN, J.S.C.